**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| SECURITY NETWORKS, LLC,<br>Plaintiff,<br>v.<br>ALARM ONE, INC. AND PETER MALTBY,<br>Defendant. | Civil Action No. 1:07-cv-00371 |

**MEMORANDUM IN SUPPORT OF MOTION OF ALARM ONE, INC.**
**TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Dated: June 18, 2007

Michael R. Lastowski (DE 3892)
DUANE MORRIS LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 657-4900
Facsimile: (302) 657-4901
E-mail: mlastowski@duanemorris.com

Edward J. Naughton (BBO #600059)
Geraldine Aine (BBO #665578)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
Telephone: (617) 523-2700
E-mail: edward.naughton@hklaw.com
geraldine.aine@hklaw.com

Counsel to ALARM ONE, INC.

# TABLE OF CONTENTS


**I. INTRODUCTION** .......... **1**

**II. FACTUAL BACKGROUND** .......... **2**

- **A.** Alarm One, An Illinois Corporation With Its Place of Business In California, Sells Its Illinois Customers To A Buyer Organized And Headquartered In Florida .......... 2
- **B.** The Parties Submit Their Dispute Over The Final Purchase Price To A Connecticut Consulting Firm Acting As Independent Arbiter .......... 4
- **C.** Alarm One Has No Meaningful Contacts With Delaware .......... 5

**III. ARGUMENT** .......... **5**

- **A.** The Delaware Long-Arm Statute Does Not Reach Alarm One. .......... 6
- **B.** The Assertion Of Personal Jurisdiction Over Alarm One Would Violate Due Process. .......... 7
  - **1.** Alarm One Has Not Engaged In Any Conduct In Delaware. .......... 8
  - **2.** Alarm One Is Not Subject to Specific Jurisdiction in Delaware. .......... 8

**IV. CONCLUSION** .......... **10**

# TABLE OF CITATIONS

## FEDERAL CASES

*Blue Ball Prop., Inc., v. McClain*, 658 F. Supp. 1310, 1314 (1987) ....................5

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)....................9, 10

*Dollar Sav. Bank v. First Sec. Bank of Utah*, 746 F.2d 208, 213 (3d Cir. 1984) ..............9

*Gehling v. St. George's School of Med., Ltd.*, 773 F.2d 539, 541 (3d Cir. 1985) ..........8, 9

*Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414-16 (1984)........ 7, 8

*In re Matter Nat.'l Heritage Life Ins. Co.*, 656 A.2d 252, 256 (1994)....................9, 10

*LaNuova D&B, S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986) ....................5, 7

*Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1221 (3rd Cir. 1992) ....................5, 6, 7

*Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Assoc.*, 819 F.2d 434, 437 (3d Cir. 1987) ....................7, 8

*Sunbelt Corp v. Noble, Denton & Assocs., Inc.*, 5 F.3d 28, 32 (3d Cir. 1993) ....................9

*Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1995) ....................9

*Werner v. Miller Technology Management*, L.P., 831 A.2d 318, 330 (2003) ....................9

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980) ....................7

## STATE STATUTES AND RULES

10 Del. C. § 3104 ....................6, 7

# I. INTRODUCTION

In December 2005, plaintiff Security Networks, LLC ("Security Networks") entered an agreement to purchase assets from defendant Alarm One, Inc. ("Alarm One"). The transaction had no connection whatsoever with Delaware. Security Networks is a Florida limited liability company located in West Palm Beach; Alarm One is an Illinois corporation headquartered at the time in Anaheim, California. Security Networks bought and Alarm One sold all of Alarm One's security alarm customer accounts in the state of Illinois. The parties negotiated the agreement primarily by telephone and email between Florida and California, and they executed the agreement electronically; they never came to Delaware.

After the transaction closed, Security Networks sought a post-closing reduction in the purchase price for the accounts that it had acquired. In accordance with their agreement, the parties engaged a Connecticut consulting firm to review the purchase price adjustment as independent arbiter. That dispute resolution process was conducted entirely by phone and by email between Alarm One in California, Security Networks in Florida, and the Connecticut consulting firm.

After the independent arbiter issued a draft report, Security Networks filed suit in Delaware Chancery Court to enforce the independent arbiter's decision. Alarm One removed the action to this Court and now moves to dismiss it under Fed. R. Civ. P. 12(b)(2). Alarm One has no assets, employees, or customers in Delaware, and has no contacts that could subject it to personal jurisdiction here. Accordingly, Security Networks' complaint should be dismissed.

## II. FACTUAL BACKGROUND

### A. Alarm One, An Illinois Corporation With Its Place of Business In California, Sells Its Illinois Customers To A Buyer Organized And Headquartered In Florida

Alarm One is an Illinois corporation with its principal place of business in Orange, California.[1] An independently owned security company, Alarm One is engaged in the business of selling and installing electronic security alarm systems, such as burglar and fire alarms. Declaration of Douglas R. Schultz ("Schultz Decl.") ¶ 2.

On December 23, 2005, Alarm One and Security Networks entered into an Asset Purchase Agreement in which Alarm One agreed to sell and Security Networks agreed to purchase all of Alarm One's customer accounts in Illinois. *See* Asset Purchase Agreement (attached at Tab A to Schultz Decl.). According to the Asset Purchase Agreement, Security Networks, LLC is a limited liability company organized under Florida law with its place of business in West Palm Beach, Florida. *See* Asset Purchase Agreement (attached at Tab A to Schultz Decl.).[2] The parties' transaction was negotiated by telephone and electronic mail, and it was closed electronically, with Alarm One participating from California and Security Networks from Florida. Schultz Decl., ¶ 4.

The parties agreed upon a formula for the purchase price of these assets: Security Networks was to pay a multiple of the recurring monthly revenue generated by the accounts, less an adjustment for revenue that Alarm One had billed or collected prior to closing for services to be provided after the closing. *See* Asset Purchase Agreement, § 2.1(c) (attached at Tab A to Schultz Decl.). The parties anticipated that some accounts would be "non-performing" – some customers would be in arrears, for instance, or would have notified Alarm One of their intent not to renew their contracts – and they established a mechanism for adjustments to the Final

---

[1] At the time of the transaction, Alarm One's place of business was in Anaheim, California.
[2] Curiously, Security Networks' complaint omits any allegations about the parties' locations.

Purchase Price in view of these non-performing accounts. *See* Asset Purchase Agreement, § 2.1(d) (attached at Tab A to Schultz Decl.).

Specifically, Security Networks agreed to pay a specified amount of money upon closing. Within 30 days after closing (during which time Security Networks could conduct an analysis of the accounts), Security Networks was required to present an estimated purchase price, and within 120 days following closing, Security Networks would present a final purchase price. *See* Asset Purchase Agreement, § 2.1(d) (attached at Tab A to Schultz Decl.). The estimated and final purchase prices were to be supported by detailed analyses. If Alarm One disputed Security Networks' calculation of the estimated or final purchase prices, it was to provide a written notice describing the dispute. *See* Asset Purchase Agreement, § 2.1(d) (attached at Tab A to Schultz Decl.).

The parties' Agreement set out a procedure for resolving disputes if the parties were unable to do so themselves. They named Benchmark Performance Partners LLC ("Benchmark") to act as "independent arbiter" to review the purchase price adjustment:

> Should Seller dispute Buyer's calculation of the Estimated Purchase Price or the Final Purchase Price, Seller will promptly, but in no event later than 30 days after receipt of such calculation, deliver to Buyer written notice describing in reasonable detail the dispute, together with the Seller's determination as to the amount of Estimated Purchase Price or the Final Purchase Price, as the case may be, in reasonable detail. If the dispute is not resolved by the parties within 20 days from the date of receipt by Buyer of written notice from Seller, *the parties agree to promptly engage Benchmark Partners (the "Independent Arbiter") to resolve the dispute within 30 days after such engagement.* The Independent Arbiter's determination will be final and binding on the parties.

*See* Asset Purchase Agreement, § 2.1(d) (attached at Tab A to Schultz Decl.).

**B. The Parties Submit Their Dispute Over The Final Purchase Price <u>To A Connecticut Consulting Firm Acting As Independent Arbiter</u>**

As it happened, Security Networks and Alarm One were not able to agree on an adjustment to the purchase price. The parties agreed on certain adjustments, but a dispute ensued regarding the Final Purchase Price. Accordingly, the parties submitted their dispute to Benchmark. Benchmark is a consulting firm with experience in the security alarm industry. Its office is located at 705 Boston Post Road, Suite 4, Guilford, Connecticut 06447. Schultz Decl., ¶ 7.

Benchmark's review of the purchase price dispute did not involve any in person meetings. Rather, the parties and their counsel held telephone conferences with Benchmark and they submitted information and data by electronic mail. Alarm One participated by telephone and email from its offices in southern California (at the time, in Anaheim, California). Schultz Decl., ¶ 8.

After several telephone conferences and email exchanges, Benchmark prepared a draft report that set out proposed findings and rulings. Benchmark sent the draft report to the parties' counsel on Monday April 16, 2007 and requested that the parties provide comments. Benchmark did not specify a time frame for submitting comments. Schultz Decl. ¶ 9. On May 1, 2007, Alarm One's counsel provided comments to Benchmark by electronic mail from Boston. Security Networks did not submit any comments. Schultz Decl., ¶ 10.

Benchmark never responded to or otherwise addressed Alarm One's comments. Schultz Decl., ¶ 11. Nevertheless, Security Networks filed suit in Delaware Chancery Court to enforce Benchmark's decision.

### C. Alarm One Has No Meaningful Contacts With Delaware

Alarm One has no presence in Delaware. Alarm One is not incorporated in Delaware, and never has been. Schultz Decl. ¶ 12. It is incorporated in Illinois, and it maintains its place of business in southern California. Schultz Decl. ¶ 13. Alarm One does not own any assets in Delaware. Alarm One does not have an office or employees here, and it owns no bank accounts or real estate here. Schultz Decl. ¶¶ 14, 15, 16. Alarm One does not have a mailing address, post office box, or telephone number in Delaware. Schultz Decl. ¶ 14.

The Asset Purchase Agreement has only the most attenuated connection to Delaware: a Delaware choice of law provision.[3] In every other respect, however, the Agreement is unconnected with Delaware. It was negotiated between California and Florida; Alarm One's representatives never appeared in Delaware in connection with the negotiation or execution of the Agreement. Schultz Decl. ¶ 21. It concerned the sale of assets located in Illinois, and the Agreement was performed entirely outside of Delaware.

## III. ARGUMENT

The standard for analyzing a challenge to personal jurisdiction is familiar. As plaintiff, Security Networks bears the burden of alleging and proving that Alarm One is subject to jurisdiction in Delaware. *Blue Ball Prop., Inc., v. McClain*, 658 F. Supp. 1310, 1314 (D. Del. 1987). In assessing Security Network's evidentiary showing, the Court must conduct a two-step analysis. *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1221 (3rd Cir. 1992); *LaNuova D&B, S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986). The Court must first

[3] The Agreement also provides that some disputes – but ***not*** disputes over the purchase price – will be resolved through arbitration before the American Arbitration Association in Wilmington, Delaware. *See* Asset Purchase Agreement, § 8.3 (attached at Tab A to Schultz Decl.). That process was not the one that gives rise to this dispute, however, because the arbitration provision in Section 8.3 expressly excludes disputes over purchase price adjustments.

consider whether Delaware's long-arm statute for service of process on nonresident defendants is applicable. *See Farino*, 960 F.2d at 1221. Then, the Court must determine whether subjecting Alarm One, a nonresident defendant to jurisdiction in Delaware violates the Due Process Clause of the Fourteenth Amendment. *Id.*

Here, Security Networks cannot assert any facts showing that jurisdiction is authorized under Delaware's long-arm statute, 10 Del. C. § 3104. Moreover, Security Networks cannot show that the exercise of jurisdiction over Alarm One satisfies due process. Accordingly, the Complaint must be dismissed.

**A. <u>The Delaware Long-Arm Statute Does Not Reach Alarm One</u>**

Security Networks' complaint fails from the very outset: it does not even allege that the Delaware long-arm statute, 10 Del. C. § 3104, authorizes this Court to assert jurisdiction. In any event, Security Networks could not truthfully make such an allegation. The long arm statute authorizes jurisdiction over a nonresident who "in person or through an agent:"

> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply services or things in this State;
>
> (3) Causes tortious injury in the State by an act or omission in this State;
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;
>
> (5) Has an interest in, uses or possesses real property in the State; or
>
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

10 Del. C. § 3104(c). Alarm One has done none of these things.

**B. The Assertion Of Personal Jurisdiction Over Alarm One Would Violate Due Process**

Even if Security Networks somehow could allege and offer evidence that this Court's jurisdiction is authorized by the Delaware long-arm statute – and it could not – the Court's exercise of jurisdiction must still comport with the requirements of due process imposed by the U.S. Constitution. *Bowe Co.*, 513 A.2d at 768. As the United States Supreme Court has held, to satisfy due process, "a state court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum State" so "that maintenance of the suit does not offend traditional notions of fair play and substantial justice" because the defendant could reasonably have anticipated being haled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980) (internal quotations omitted).

A court may exercise either general or specific jurisdiction. *See Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414-16 (1984); *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Assoc.*, 819 F.2d 434, 437 (3d Cir. 1987). General jurisdiction attaches when a party's contacts with the forum state are so systematic and continuous that the "party can be called to answer any claim against her, regardless of whether the subject matter of the cause of action has any connection to the forum." *Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992). Specific jurisdiction is available when a suit arises out of the defendant's contacts with the forum. *Helicopteros Nacionales de Columbia S.A.*, 466 U.S. at 414 n.8. Here, Security Networks cannot allege, let alone show, any facts that would permit either general or specific jurisdiction over Alarm One in Delaware.

1. **Alarm One Has Not Engaged In Any Conduct In Delaware**

Security Networks "must show significantly more than mere minimum contacts to establish general jurisdiction" over Alarm One. A defendant is subject to general jurisdiction in a forum state only when it has purposefully engaged in "systematic and continuous activities" in the state. *See, e.g., Helicopteros Nacionales de Colombia*, 466 U.S. at 414-16 (defendant's travel to Texas to negotiate contract, acceptance of checks drawn on Texas bank, purchase of 80% of its helicopters from Texas company, and hiring of plaintiffs' decedents in Texas held insufficient to establish general jurisdiction in Texas); *Provident Nat'l Bank*, 819 F.2d at 437. The plaintiff must demonstrate that the defendant "has maintained 'continuous and substantial' forum affiliations," *Gehling v. St. George's School of Med., Ltd.*, 773 F.2d 539, 541 (3d Cir. 1985) (quoting *Reliance Steel Prods. v. Watson, Ess, Marshall, & Enggas*, 675 F.2d 587, 588 (3d Cir. 1982)), by maintaining an office or other physical presence in the state, for instance, or by holding a bank account or security interests that are central to the conduct of the defendant's business. *E.g.*, *Provident Nat'l Bank*, 819 F.2d at 437 (bank held subject to general jurisdiction because it owned a bank account in forum that it used every day, and because "[t]his daily contact was a continuous and central part of [its] business.").

Security Networks cannot reasonably hope to establish that Alarm One is subject to general jurisdiction in Delaware. Not only does Alarm One not have any substantial, continuous, and centrally important connection to the state, but it literally has ***no*** connection here.

2. **Alarm One Is Not Subject to Specific Jurisdiction in Delaware**

Security Networks apparently believes that the Asset Purchase Agreement somehow establishes specific jurisdiction. It is clear as a matter of law that it does not.

To establish specific jurisdiction, Security Networks must first demonstrate that its claims arise from Alarm One's activities within Delaware. *Provident Nat'l Bank*, 819 F.2d at 437.

Security Networks must show that Alarm One intentionally directed its activities toward Delaware, purposefully availing itself of the privilege of conducting business in the state, so that Alarm One can be said to have had "minimum contacts" with Delaware. *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.*, 75 F.3d 147,150 (3d Cir. 1995); *Werner v. Miller Technology Management*, L.P., 831 A.2d 318, 330 (Del. 2003). If Security Networks could prove that Alarm One has had such minimum contacts, it would then be necessary to show that this Court's exercise of jurisdiction would not offend traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985); *Gehling*, 773 F.2d at 541; *Dollar Sav. Bank v. First Sec. Bank of Utah*, 746 F.2d 208, 213 (3d Cir. 1984).

This case does not arise out of any in-state activities by Alarm One, however, but from an Agreement by non-residents that was negotiated and performed outside of Delaware. The Agreement would not be enough to create jurisdiction over Alarm One even if Security Networks were a resident of Delaware. "[A] court may not exercise jurisdiction over a nonresident merely because the nonresident has contracted with a resident of the forum state." *In re Matter Nat.'l Heritage Life Ins. Co.*, 656 A.2d 252, 256 (1994); *see also Burger King Corp.*, 471 U.S. at 478; *Vetrotex Certainteed*, 75 F.3d at 151; *Sunbelt Corp v. Noble, Denton & Assocs., Inc.*, 5 F.3d 28, 32 (3d Cir. 1993) ("It is well established . . .that a nonresident's contracting with a forum resident, without more, is insufficient to establish the requisite 'minimum contacts' required for an exercise of personal jurisdiction over the nonresident."). But here, Security Networks is not even a resident of Delaware.

Apparently Security Networks contends – implicitly – that the Delaware choice of law provision in the Asset Purchase Agreement confers specific jurisdiction. It is well-settled, however, that such a provision will not alone create jurisdiction. *Burger King v. Rudzewicz*, 471

U.S. 462, 481-82 (1985) (entering into contract governed by law of the forum does not alone give rise to jurisdiction); *In re Matter of National Heritage Life Ins. Co.*, 656 A.2d at 257 (a non-resident's entering into a contract with a domicile of the forum state is insufficient to permit the exercise of personal jurisdiction).[4] Security Networks has not alleged or shown, and could not allege or show, any activities or contacts that could create specific jurisdiction.

## IV. CONCLUSION

Security Networks' claims concern a contract that was between residents of California and Florida for the sale of accounts in Illinois. It follows from a dispute resolution process that was conducted by a consultant in Connecticut. The claims have only the most glancing connection with Delaware – they happen to be governed by Delaware law – and that incidental connection is plainly insufficient to allow this Court constitutionally to exercise jurisdiction. Security Networks' complaint must be dismissed.

Dated: June 18, 2007

Respectfully submitted,

ALARM ONE, INC.

By its attorneys,

Michael R. Lastowski (DE 3892)
DUANE MORRIS LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 657-4900
Facsimile: (302) 657-4901
E-mail: mlastowski@duanemorris.com

---

[4] The provision in the Asset Purchase Agreement providing for AAA arbitration in Wilmington is similarly irrelevant. This dispute concerns a purchase price adjustment, which is governed by a separate provision in the contract and is expressly excluded from the arbitration provision. *See* Asset Purchase Agreement, § 8.3 (attached at Tab A to Schultz Decl.). Benchmark, the independent arbiter, performed its review in Connecticut, and by telephone and email with the parties.

*Of counsel*:

Edward J. Naughton (BBO #600059)
Geraldine Aine (BBO #665578)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
Telephone: (617) 523-2700
E-mail: edward.naughton@hklaw.com
geraldine.aine@hklaw.com

# 4601595_v3